IN THE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT LARISON,

      Plaintiff,                            CASE NO: 3:20-cv-01140-BJD-JRK

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION; AMERIS BANK;
and AMERIS BANCORP INC.,

      Defendants.
_____/

**PLAINTIFF'S OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS
GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
AND DENYING PLAINTIF'FS MOTION FOR SUMMARY JUDGMENT**

Plaintiff ROBERT LARISON, by and through the undersigned counsel, responds to the Report and Recommendation of the Honorable Laura Lothman Lambert. (Doc. 47) Objections to a Magistrate Judge's report and recommendation are reviewed *de novo*, *see* Fed. R. Civ. P. 72(b)(3) and 28 U.S.C. § 636(b)(1)(C), and a court should "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. Of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990).

    **I.**    **The Magistrate Judge gave inappropriate deference to the Agency when the Agency interpreted its regulation in a manner contrary to the enabling statute.**

The definition of a golden parachute differs under its statutory and regulatory definitions. 12 U.S.C. § 1828(k)(4)(A) defines a golden parachute as

> Any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution or covered company for the benefit of any institution-affiliated party pursuant to an obligation of such institution or covered company that—
> (i) is contingent on the termination of such party's affiliation with the institution or covered company . . .

Pursuant to the statute, the FDIC promulgated 12 C.F.R. § 359.1(f)(1), which defines a golden parachute payment as

> (1) "any payment (or any agreement to make any payment)" by an FDIC-insured bank; (2) "in the nature of compensation"; (3) "for the benefit of any current or former" employee; (4) that "[i]s contingent on, or by its terms payable on or after, the termination" of the employee's employment by the bank; and (5) is or would be received on or after a determination by the FDIC that the insured bank is in a troubled condition."

*Harrison v. Ocean Bank*, 614 F. App'x 431 (11th Cir. 2015) (quoting 12 C.F.R. § 359.1(f)(1)). The statute limits the definition to payments that are contingent on termination. Black's Law Dictionary defines "contingent" as "dependent on something that might or might not happen in the future; conditional." The regulatory definition expands the statutory requirement that payment must be contingent on termination, by including any amounts payable on or after the termination of employment, regardless of whether they became payable **upon** termination. Under either the statutory or regulatory definition, however, Larison's SERP does not meet the definition of a "golden parachute."

The Administrative Procedures Act provides that a federal court shall hold unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court must reject an agency's interpretation of its own regulation if that interpretation is inconsistent with Congress's statutory directives. *See Daugherty v. Director, Office of Workers Comp. Program*, 897 F.2d 740, 742 (4th Cir. 1990) (citing *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 842-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Additionally, as pointed out by the Magistrate Judge, "[a]gency actions and conclusions may be found arbitrary and capricious 'where the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Doc. 47 (quoting *BBX Cap. v. FDIC*, 956 F.3d 1304, 1314-15 (11th Cir. 2020) (per curiam)).

The Magistrate Judge accepted FDIC's interpretation of the SERP as a "golden parachute" based on the fact that the benefit is payable *after* termination, concluding that 12 C.F.R. § 359.1(f)(1) permitted such an interpretation. The statute, however, does not permit golden parachute designation merely based on when the benefit is paid, but instead requires that payment of a benefit be ***contingent*** upon termination. 12 U.S.C. § 1828(k)(4)(A). Larison's SERP benefit was not contingent on his termination, and instead he became entitled to the SERP

3

based on his age and years of service, and the SERP was payable to him before he left the bank's employment. While the golden parachute regulation promulgated by the FDIC, applied by the Magistrate Judge, expands the definition of a golden parachute beyond that provided by the statute, because the regulation's requirements are inconsistent with and depart from the statutory requirements to determine whether a payment is a golden parachute, the FDIC's regulation is invalid. The Magistrate's recommendation should therefore be rejected because of the FDIC's determination is inconsistent with the statute.

The FDIC's interpretation, as accepted by the Magistrate Judge, disallows a valid retirement benefit based merely on the fact that it was payable after the termination of employment. There is no dispute that Larison became entitled to payment of his SERP benefit before he was terminated when he reached age 55, and that he would have remained entitled to receive his benefit regardless of his employment status. Larison could have continued working for the duration of his benefit period and there would be no question that the benefit would be payable, despite no difference in the language of the SERP, statute, regulation, or condition of the bank, with the only distinction being how long Larison continued working for the Bank following his 55th birthday.  The statute does not permit such a result, and instead only permits characterization of a benefit as a golden parachute when the benefit becomes payable because of the termination. Larison's SERP benefit became payable before his termination and therefore does not qualify as a golden parachute.

## II. Larison's SERP benefit was not increased in amendments made during and following the lookback period, and to the extent that any increase was made, the pre-lookback benefit is payable to him.

### A. *The amendments during the troubled period did not increase the benefit.*

Under the plain language of 12 C.F.R. § 359.1(d), Larison's SERP was payable as a bona fide deferred compensation plan so long as it was made "in accordance with any amendments to such plan during such one-year period that do not increase the benefits payable thereunder." Amendments made during the one-year lookback period that do not increase benefits are payable.

There is no dispute that any amendments to Larison's SERP during the one-year lookback period and while the Bank was in troubled condition did not actually increase Larison's SERP benefit, as required by 12 C.F.R. § 359.1(d). Instead, the FDIC and Magistrate Judge departed from the language of the regulation in holding the benefit was not payable because it "potentially increased [plaintiff's] benefits during the look-back period." FDICAR000232; FDICAR000355; FDICAR000708-709. That the benefit was "potentially increased" based on performance metrics is not consistent with 12 C.F.R. § 359.1(d), which requires that any amendments "do not increase the benefits payable thereunder."

### B. *If there were an increase, the pre-lookback benefit should have payable.*

5

There is no dispute that there are several versions of Larison's SERP both predating the institution's troubled condition designation and within one year of the institution being troubled. FDICAR000043; FDICAR000000052; FDICAR000055; FDICAR000067; FDICAR000148; FDICAR000239; FDICAR000580. There is also no dispute that Larison's SERP benefit decreased under the amendments made during the institution's lookback period and during the time the institution was troubled. FDICAR000168-69; FDICAR000343-46; FDICAR000709. Even if the SERP benefit value had increased during the lookback period, the remedy would be for the FDIC to permit payment under the last version of the SERP predating the lookback period.[1] In this case, the second SERP was created prior to the lookback period, and should have entitled Larison to benefits. The FDIC erroneously contended that Larison administratively only addressed the Sixth SERP, Dkt. 38 at 9, but the record shows that Larison addressed the SERP generally, rather than any specific version. FDICAR000038; FDICAR000159; FDICAR000534. In fact, the FDIC and OCC acknowledged reviewing multiple versions of Larison's SERP. FDICAR000131; FDICAR000201; FDICAR000709; *see also* FDICAR000043-54; FDICAR000055-65).

Indeed, the FDIC's own attorney agreed with Larison's position that the pre-lookback period SERP was effective if later versions were invalidated. Agency

---

[1] 12 C.F.R. § 359.1(d)(3)(ii). ("Any payment made pursuant to such plan is ***made in accordance with the terms of the plan as in effect no later than one year prior to any of the events described in paragraph (f)(1)(ii) of this section and in accordance with any amendments to such plan during such one year period that do not increase the benefits payable thereunder . . .***") (emphasis added).

6

counsel Barbara Lukes confirmed in a 2017 email that the agency must review the pre-troubled condition versions of the SERP if the later ones were invalid:

> With respect to the plans, the SERP exception under Part 359 would require us to consider the plan that was in effect one year before the troubled condition (11/1/2010). This would mean that just the Second Amended and Restated Plan would apply of all of the other exceptions are applicable. The second amendment provided that the vesting occurred at the earliest of the completion of the second step conversion in 2011, prior to his termination.

FDICAR000171. Despite its counsel's concession, the FDIC never evaluated the validity of the pre-lookback SERP. The agency reviewed the original date of the SERP and specified the various amendments to the SERP and the dates on which they occurred, but only for the purpose of determining whether the SERP value potentially increased during the troubled period. *Id.* As acknowledged by its own counsel, it was error not to review entitlement under the pre-lookback version. FDICAR000171. The Magistrate Judge erred in only analyzing whether the FDIC's limited analysis of only the Sixth SERP was arbitrary and capricious based on the 12 C.F.R. § 359.1(d)(3)(ii) and in light of the FDIC's concession that earlier versions of the SERP must be reviewed if the Sixth SERP is invalidated.

The FDIC's retroactive invalidation of a benefit created ten years before Larison's retirement and eight years before the declaration of the "troubled condition" conflicts with the clear meaning of the one-year lookback period. The FDIC's application of its own regulations under 12 C.F.R. § 359.1 and 12 C.F.R. § 359.4 are inconsistent with the statutory and regulatory authority and therefore should not be given deference by this Court.

7

### III. The Magistrate Judge erred in providing deference to the FDIC's evaluation of the 12 C.F.R. § 359.3(b) factors when the FDIC's evaluation was based on incorrect facts that are contradicted by the record.

The FDIC is permitted to allow payment of a golden parachute payment that does not otherwise qualify as a bona fide deferred compensation plan based on the institute affiliated party's ("IAP") conduct at the financial institution and upon consideration of other relevant facts and circumstances supporting payment of the benefit. 12 C.F.R. § 359.4(b). While the FDIC's evaluation of those factors is entitled to deference, as recognized by the Magistrate Judge, the FDIC and the Magistrate Judge's conclusions upon evaluating the 12 C.F.R. § 359.4(b) factors was based on incorrect facts that either contradicted or were unsupported by the administrative record, which renders the FDIC's review arbitrary and capricious.

In its April 14, 2021 letter denying Larison's SERP benefit, the FDIC inaccurately deemed Larison responsible for the Bank's deterioration. The FDIC erroneously determined that Larison was criticized by regulators for his management of the Bank, FDICAR000475, a finding contradicted by the Office of Thrift Supervision's examination report which stated that "Atlantic Coast Bank's senior management team and its board of directors are regarded as competent and capable. The bank is well capitalized, and management has taken several initiatives to raise additional capital and improve the earnings structure of the bank." FDICAR000711. The FDIC failed to consider that the Bank's downgrade to troubled condition status occurred in the midst of the housing crisis and recession,

8

while OTS acknowledged housing market conditions led to the Bank's downgraded condition. FDICAR000475. Instead of considering the articulated reasons for the Bank's downgraded condition, the FDIC instead surmised that Larison's leadership must have been the reason for the Bank's downgraded condition, despite over 20 years of successful leadership and service to the Bank and no indication to support any wrongdoing, negligence, or irresponsibility on Larison's part to lead to the Bank's downgraded condition. The FDIC's allegations regarding Larison's supposed involvement the Bank's downgraded condition are unsupported, and are contrary to the administrative record and therefore should not have been given deference.

Respectfully submitted this 3rd day of August 2022.

**DELEGAL & POINDEXTER, P.A.**

/s/ T.A. "Tad" Delegal, III
**T.A. DELEGAL, III, B.C.S.**
Fla. Bar No.: 892701
Email: tad@delegal.net
Secondary email: office@delegal.net
**JAMES C. POINDEXTER**
Fla. Bar No.: 0116039
Email: james@delegal.net
**ALEXANDRA E. UNDERKOFLER**
Fla. Bar No.: 1018209
Email: alex@delegal.net
424 E. Monroe Street
Jacksonville, Florida 32202
Telephone: (904) 633-5000
Facsimile: (904) 358-2850
Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I CERTIFY that the foregoing document was electronically filed with the U.S. District Court on this 3rd day of August 2022, via CM/ECF and was served this day on Erik Bond (erbond@fdic.gov), Attorney for Defendant FDIC, and John T. Rogerson, III (john.rogerson@arlaw.com) and James N. Floyd, Jr. (james.floyd@arlaw.com), Attorneys for Defendants Ameris Bank and Ameris Bancorp, via CM/ECF and/or e-mail.

/s/ T.A. "Tad" Delegal, III
T.A. "Tad" Delegal, III