UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT LARISON,  CASE NO.:  3:20-cv-01140-BJD-LLL

    Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, AMERIS BANK, and
AMERIS BANCORP INC.,

    Defendants.
_____/

**DEFENDANTS, AMERIS BANK AND AMERIS BANCORP INC.'S
RESPONSE TO PLAINTIFF, ROBERT LARISON'S OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS
GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants, Ameris Bank and Ameris Bancorp Inc. (collectively, "Ameris"), by and through undersigned counsel and pursuant to Rule 72, Federal Rules of Civil Procedure, hereby respond to Plaintiff, Robert Larison's ("Larison" or "Plaintiff") Objections to Magistrate Judge's Report and Recommendations Granting Defendant's Motions for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment [DE 48] (the "Objections"), and in support state:

1.    After considerable summary judgment briefing by the parties in this case, the Honorable Laura Lothman Lambert issued a well-reasoned Report and

Recommendation Granting Defendants' Motions for Summary Judgment, Entering Judgment in their Favor, and Denying Plaintiff's Motion for Summary Judgment [DE 47] (the "Report and Recommendation"). Larison's Objections largely repeat the same arguments he has raised since the outset of this case, which contradict federal law and longstanding FDIC regulatory interpretation.

## ARGUMENT

**I. Judge Lambert gave appropriate deference to the FDIC in determining that the SERP constitutes a "golden parachute."**

2. Larison first argues that Judge Lambert gave inappropriate deference to the FDIC's determination that Larison's Supplemental Retirement Agreement ("SERP") provided for prohibited "golden parachute" payments. Larison asserts that the FDIC's determination is not entitled to deference because the FDIC's regulation, 12 C.F.R. § 359.1(f)(1), expanded the definition of a "golden parachute" beyond the definition in 12 U.S.C. § 1828(k)(4)(A). 12 C.F.R. § 359.1(f)(1) states that a "golden parachute" is "contingent on, or by its terms payable on or after the termination" of the employment by the bank.

3. As a preliminary matter, while the majority of Larison's arguments in his Objections are not new, his challenge to the FDIC's promulgation of 12 C.F.R. § 359.1(f)(1) is. Larison's Amended Complaint [DE 21] did not challenge the FDIC's promulgation of the regulation in support of 12 U.S.C. § 1828(k)(4)(A). Instead, the Amended Complaint takes issue with the FDIC's application of 12

2

C.F.R. § 359.1(f)(1) to determine that the SERP constitutes a prohibited "golden parachute." There is a substantial difference between a claim challenging the promulgation of a regulation, and a claim challenging an agency's action interpreting its regulation. Larison should not be permitted to challenge the Report and Recommendation with this distinct argument not pled in his Amended Complaint (and therefore, not previously addressed by the FDIC and Ameris).

4. Nevertheless, even if the Court were to permit Larison's argument, it fails on the merits. Larison's Objections claim that Judge Lambert "accepted FDIC's interpretation of the SERP as a 'golden parachute' based on the fact that the benefit is payable *after* termination, concluding that 12 C.F.R. § 359.1(f)(1) permitted such an interpretation." Larison argues that the statutory definition does not permit such a conclusion, and instead, to be a golden parachute, a payment must be contingent upon termination without regard to whether the benefit is otherwise payable on or after termination.

5. Larison's argument ignores the fact that the terms of the SERP reflect that the payment of Larison's benefits were contingent upon the termination of his employment with Atlantic Coast Bank ("Atlantic Coast Bank") (i.e., the Separation

of Service Benefit)[1]. As Judge Lambert correctly pointed out in the Report and Recommendation,

> The fact that plaintiff could have become entitled to the benefit in more than one way does not mean the FDIC's determination was arbitrary and capricious. Rather, the sixth SERP as written was 'by its terms payable on or after' plaintiff's termination as one of the contingencies that would trigger his payment . . .

As a result, the FDIC's decision that the retirement benefits were contingent on Larison's termination of employment with ACB is reasonable and not arbitrary as "[o]ne could reasonably characterize the payment obligation as contingent on either [Larison's] termination or his continued employment" with ACB. *Von Rohr v. Reliance Bank*, 4:13-CV-232 CEJ, 2014 WL 2110031 (E.D. Mo. May 20, 2014). Further, that determination is consistent with other courts that have examined the scope of that same provision. *Rohr v. Reliance Bank,* 826 F.3d 1046, 1051 (8th Cir. 2016); *Knyal v. OCC*, C 02-2851 PJH, 2003 WL 26465939, at *13 (N.D. Cal. Nov. 25, 2003).

6. Nevertheless, even if the Court were to find that the SERP was not plainly contingent, Larison's retirement benefit is certainly, "by its terms, payable on or after the termination," under 12 C.F.R. § 359.1(f)(1), and the regulation does

---

[1] The Sixth SERP provides for payment of benefits to Larison upon the occurrence of various events (as more particularly defined in the Sixth SERP): i) Normal Benefit; ii) Death Benefit; iii) Disability Benefit; iv) Separation From Service Benefit (or Involuntary Termination Benefit); and v) Change in Control Benefit. [FDICAR000750-000751].

4

not inappropriately expand 12 U.S.C. § 1828(k)(4)(A)'s definition of a "golden parachute."

7. Congress authorized the FDIC to "prohibit or limit, by regulations or order, any golden parachute payment," and further authorized the FDIC to "prescribe regulations to carry out the purposes of various provisions of [the FDI Act]." 12 U.S.C. § 1828(k)(1), (2). "Where, as here, Congress has given an agency authority to administer a statutory scheme and to promulgate regulations defining the nature and extent of that scheme, the court must give considerable weight and deference to that agency's interpretation and construction." *Knyal*, 2003 WL 26465939, at *13.

8. The FDIC's promulgation of 12 C.F.R. § 359.1(f)(1)(i) pursuant to that authorization, and its inclusion of the phrase "by its terms is payable on or after," was within the scope of its legitimate rule-making authority, reasonable, and is entitled to substantial deference.[2] *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984); *see also Harrison v. Ocean Bank*, 614 Fed. App'x 429, 436-37 (11th Cir. 2015). Further, the "golden parachute" regulations have been in effect for thirty years. 56 Fed. Reg. 50529-01 (Oct. 7, 1991); *see also Barnhart v. Walton*, 535 U.S. 212, 220 (2002); *U.S. v. Mead Corp.*, 533 U.S. 218, 229-30 (2001); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

---

[2] The FDIC's broad interpretation of the statute is particularly appropriate given corporate evasion and loophole concerns. *See BBX Capital*, 956 F.3d at 1316; *see also Rohr*, 826 F.3d at 1051.

9. The FDIC's promulgation of 12 C.F.R. § 359.1(f)(1)(i) has already been upheld as reasonable and within the FDIC's regulatory mandate. *See Knyal*, 2003 WL 26465939, at *12-13; *see also Von Rohr*, 2014 WL 2110031. In *Kynal*, when addressing the question of whether the FDIC's inclusion of the phrase "by its terms is payable on or after," the court concluded,

> Congress granted the FDIC broad authority to approve or deny golden parachute payments. It was certainly within the spirit of § 18(k) for the FDIC to extend this protection to agreements to make payments that are "payable after" termination as well as to those that are "contingent on" termination. Particularly, as the FDIC pointed out, in view of the exceptions provided for legitimate post-termination payments . . . it is clear that the FDIC targeted the regulation toward the specific wrong that § 18(k) was intended to address. The FDIC did not exceed its statutory authority in determining that payment of the insurance policy premiums constituted a golden parachute.

*Kynal*, WL 26465939, at *15.

10. As previously mentioned, the Eighth Circuit addressed a similar argument, specifically whether "the FDIC should regulate only those arrangements that specifically contemplate compensation solely in the event of termination," in *Rohr*, 826 F.3d 1046, at *1051. The Eighth Circuit rejected that argument, and reasoned that "Von Rohr's approach . . . would create a giant loophole" and "[b]anks and executives could structure their agreements to allow for post-termination payments that would function as golden parachutes but avoid the magic words triggering the FDIC's regulations." *Id*. Larison's argument here would similarly "create a giant loophole" allowing executives to circumvent the FDIC's regulatory

6

authority and "golden parachute" prohibitions simply by including a clause that provides for benefit payments after a certain age (or based on a stock price that could appreciate in the future).

11. Accordingly, the FDIC reasonably interpreted 12 U.S.C. § 1828(k)(4)(A) and its application of 12 C.F.R. § 359.1(f)(1) is rational and well-reasoned. As such, the FDIC's interpretation was due substantial deference, and Judge Lambert's Report and Recommendation was correct in its conclusions.

## II. Judge Lambert correctly held that the SERP was not a bona-fide deferred compensation plan.

12. Next, Larison takes issue with Judge Lambert's conclusion that the SERP is not a bona-fide deferred compensation plan, which would be exempt from the applicable "golden parachute" regulations. *See* 12 C.F.R. § 359.1(d); 12 U.S.C. § 1828(k)(4)(C) (excluding certain payments from "golden parachute" definition). Larison argues the SERP is a bona-fide deferred compensation plan based on his claim that the amendments to the SERP following the one-year look back period did not increase the benefits payable to him.

13. Comparing the proposed benefit payments under the Second SERP (executed before the one-year look back period) and the Third SERP (executed after the one-year look back period), the relevant difference was an amendment to the benefit component, which altered the benefit payment formula to include benefits based on the valuation and performance of the shares of ACB's stock rather than

7

merely a payment based on Larison's compensation history. The FDIC concluded that "[b]ecause the subsequent amendments potentially increased Mr. Larison's benefits during the look-back period, we find the requirements of 12 C.F.R. § 359.1(d)(3)(ii) is not met." [FDICAR000708-000709]. The FDIC reached this determination because ACB's stock price could have increased, which could have caused Larison's benefit payments under the Third SERP to be greater than the benefit payments under the Second SERP.

14. Larison complains that Judge Lambert's conclusion adopting the FDIC's position departs from the language of the FDIC's regulation, 12 C.F.R. § 359.1(d)(3)(ii). Simply put the FDIC's position does not depart from the requirements of the regulation, as the governing statutes and regulations only require that the FDIC review the SERP and its amendments and determine if those amendments could increase Larison's benefit payments. The FDIC did so here, and "an agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulation." *BBX Capital v. FDIC*, 956 F.3d 1304, 1315 (11th Cir. 2020).

15. Larison also claims that Judge Lambert erred by declining to reinstate the Second SERP after it concluded that the Sixth SERP was invalidated (along with the Third, Fourth and Fifth SERPs, also executed following the one-year look back period). However, Larison again fails to recognize that, following the execution of

the Third SERP, the Second SERP was no longer valid and governing. The Third SERP explicitly amends and restates the Second SERP and states that the Third SERP "constitutes the entire agreement between [ACB] and [Larison] as to the subject matter hereof. No rights are granted to [Larison] be [sic] virtue of this [Third SERP] other than as specifically set forth herein." [FDICAR000784-000794]. As was pointed out in the Report and Recommendation, Larison has provided no legal authority demonstrating that the Court may reinstate a prior, terminated and superseded SERP—a deficiency Larison has not cured in his Objections, the most recent iteration of this argument. To the contrary, a similar argument was already dismissed by the Eleventh Circuit in *BBX Capital*, 956 F.3d at 1316-17 (noting that prior severance agreements executed before a bank was designated to be in "troubled condition" are "irrelevant" because the benefits would be made under a later agreement executed while the bank was in "troubled condition").

### III. The FDIC's decision to deny Larison the discretionary exception pursuant to 12 C.F.R. § 359.4 was not arbitrary and capricious.

16. Larison's final argument takes issue with Judge Lambert's conclusion that the FDIC's denial of the discretionary exception pursuant to 12 C.F.R. § 359.4(b) was not arbitrary and capricious. Larison claims Judge Lambert's and the FDIC's analysis of the exception were based on incorrect facts. As Judge Lambert concluded, Larison's arguments are contradicted by the Administrative Record and

the analysis contained in the FDIC's April 14, 2021 decision letter. [FDICAR000708-000711].[3]

17. As explained by Judge Lambert in the Report and Recommendation, the FDIC's findings that ACB deteriorated during the time that Larison was President and CEO of ACB, and that management and oversight of ACB was deficient during that time, is well supported by the Administrative Record and support the FDIC's analysis of the 12 C.F.R. § 359.4 factors. *See* [FDICAR000708-000711]. Larison seeks to shield his responsibility for ACB's "troubled condition" by blaming the "housing crisis and recession." However, the Eleventh Circuit has affirmed the FDIC's denial of the discretionary exception despite a "protracted national economic downturn, which hit Florida markets particularly hard." *BBX Capital*, 956 F.3d at 1317-18. Accordingly, the FDIC's determination is well-supported by the record evidence, as Judge Lambert concluded.

***[Signature Block and Certificate of Service to Follow]***

---

[3] Larison's argument concerning the FDIC's denial of the discretionary exception and Larison's other arguments raised in his Response are addressed more thoroughly in Ameris' Motion for Summary Judgment [DE 34] and Response in Opposition to Larison's Motion for Summary Judgment [DE 35], as well as the FDIC's Motion for Judgment on the Administrative Record [DE 32] and Response to Larison's Motion for Summary Judgment [DE 38].

Dated: August 17, 2022.

          Respectfully submitted,

          **ADAMS AND REESE LLP**

By:  /s/ Thomas P. White
John T. Rogerson, III
Florida Bar No. 832839
john.rogerson@arlaw.com
dana.tompkins@arlaw.com
olga.thomas@arlaw.com
Thomas P. White
Florida Bar No.: 112776
Tom.White@arlaw.com
Rebecca.sullivan@arlaw.com
Richene.oliver@arlaw.com
501 Riverside Avenue, Suite 601
Jacksonville, FL  32202
Tel:  (904) 355-1700
Fax:  (904) 355-1797

*Counsel for Defendants, Ameris Bank and Ameris Bancorp Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been furnished on this 17th day of August, 2022, by the Court's CM/ECF electronic mail system to all other parties receiving CM/ECF electronic noticing.

          */s/ Thomas P. White*
          Attorney