UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ROBERT L. LARISON,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, *et al*.,<br><br>    Defendants. | Case No. 3:20-cv-01140-BJD-LLL |

**FDIC'S RESPONSE IN OPPOSITION TO
MR. LARISON'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**[1]

Judge Lambert's 29-page Report and Recommendations thoroughly addresses the key issues in this litigation, and provides ample basis for this Court's affirmance:

**I.   JUDGE LAMBERT CORRECTLY UPHELD THE FDIC'S DETERMINATION THAT THE PAYMENTS ARE "CONTINGENT ON, OR PAYABLE ON OR AFTER, . . .TERMINATION."**

The FDIC's regulations at 12 C.F.R. § 359.1(f)(1)(i) define "golden parachute payment" to include any payment "contingent on, or by its terms is payable on or after, . . . termination." Mr. Larison was demoted and ultimately

---

1. The FDIC adopts and incorporates by reference the factual background and arguments contained in its Motion for Judgment on the Administrative Record, as well as the definitions contained therein, and Response in Opposition to Mr. Larison's Motion for Summary Judgment, and Reply. Docs. 32, 38, and 44.

1

terminated from his position as CEO of the "troubled" Bank, and now claims he is entitled to receive otherwise prohibited "golden parachute payments." Given that the Proposed Payments are payable on or after Mr. Larison's termination, Judge Lambert was right to hold that the FDIC was not arbitrary in determining that the Proposed Payments meet the definition of "golden parachute payment." Doc. 47 at 18; 12 C.F.R. § 359.1(f)(1)(i); 12 U.S.C. § 1828(k)(4)(A)(i). The Magistrate Judge correctly upheld the FDIC's findings that even though the contract provides for payment on reaching age 55, it remains "contingent on, or payable on or after, . . . termination," given it provides for payments for termination. 12 C.F.R. § 359.1(f)(1)(i). Indeed, Judge Lambert noted that Mr. Larison sought payment based on involuntary termination. Doc. 47 at 5.

Although the operative complaint in this case does not seek to invalidate an agency regulation, Mr. Larison now claims that the golden parachute regulation covering payments "payable on or after, the termination" is invalid because the statute defines payments as "contingent on termination." 12 C.F.R. § 359.1(f)(1)(i); 12 U.S.C. § 1828(k)(4)(A)(i); DOC. 48, 1-5. There is no basis to upend the agency's long-standing regulation. *See Chevron, U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984); *Harrison v. Ocean Bank*, 614 F. App'x 429, 437 (11th Cir. 2015) (per curiam). Section 1828(k) demonstrates that Congress granted the FDIC considerable breadth to issue the "golden parachute" regulations.

2

*Knyal v. OCC*, No. C 02-2851 PJH, 2003 WL 26465939, at *12 (N.D. Cal. Nov. 25, 2003). The FDIC's thirty-year old regulations appropriately fill out gaps and ambiguities in the statute—such as ambiguity within the context of "contingent on" and statutory silence as to golden parachutes "payable after" termination. 56 Fed. Reg. 50529-01 (Oct. 7, 1991). Against this backdrop, the regulation's "payable after" termination language is a reasonable exercise of agency authority. As the *Knyal* court put it:

> Congress granted the FDIC broad authority to approve or deny golden parachute payments. It was certainly within the spirit of § 18(k) for the FDIC to extend this protection to agreements to make payments that are "payable after" termination as well as to those that are "contingent on" termination.

2003 WL 26465939, at *15. Mr. Larison's attempt now to raise a facial challenge to the decades-old agency regulation—*after* losing in merits briefing—is both untimely and meritless. *Compare* Doc. 48 at 4 (claiming "the FDIC's regulation is invalid") with Doc. 39-1 at 10-11 (arguing "the regulation could be reasonably read to comply with the statute," but that the FDIC misinterpreted its own regulation); *see Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) ("[T]he district court did not abuse its discretion in declining to consider [plaintiff's] timeliness argument that was not presented to the magistrate judge.").

In any event, the FDIC's determination can be sustained on the statutory "contingent on" language alone. Mr. Larison argues that because he became entitled to payments upon reaching age 55, the payments could not possibly be

3

"contingent on" his termination. Doc. 48 at 4. But Mr. Larison overlooks that the contract provides payments based on a number of events, such as a corporate change in control, involuntary termination (including a material demotion), disability, and attainment of age 55, ACB's retirement age.[2] *See, e.g.*, A.R. 580-86. Mr. Larison would have the agency ignore these contractual provisions, and limit golden parachute payments to contracts where payment is *solely* based on termination. Judge Lambert correctly rejected Mr. Larison's argument. Doc. 47 at 18 ("[P]laintiff's argument that the regulation should only apply where a benefit becomes payable solely because of a termination is unavailing"); *see also Knyal*, 2003 WL 26465939 at *13 (holding the FDIC "properly concluded that the insurance premium payments were 'contingent on termination' because they were referenced, along with the severance payment, in the 'Termination-Without-Cause' section of the employment agreement").

    Mr. Larison's actions following demotion similarly support the FDIC's finding that the Proposed Payments are "contingent on" termination. The Administrative Record shows that Mr. Larison claimed entitlement to the Proposed

---

2. Under the operative contract, "Benefit Determination Date" is defined to mean: "(1) the Executive's Normal Retirement Date; (2) the date the Executive Incurs an Involuntary Termination prior to the Executive's Normal Retirement Date; (3) the date of the Executive's Death; (4) the date the Executive incurs a Disability; or (5) the date of a Change in Control." A.R. 581-82.

Payments due to his involuntary termination. Doc. 47 at 18 (citing A.R. 291, 1104). In other words, payment under the SERP was not triggered *only* by Mr. Larison's 55th birthday, but also by his termination. The FDIC appropriately found the Proposed Payments subject to regulation, even though one of Mr. Larison's bases was reaching retirement age. *See Von Rohr*, 826 F.3d at 151.

There are good reasons to support the FDIC's determination. Under Mr. Larison's interpretation, any troubled bank could make golden parachute payments without oversight simply by amending prohibited contracts to include payments based on reaching a designated age. *See BBX v. FDIC*, 956 F.3d at 1316 (rejecting interpretation that would make it easy to circumvent the golden parachute restrictions); *Von Rohr*, 826 F.3d at 1051. Judge Lambert correctly rejected Mr. Larison's invitation to make an end-run around the golden parachute restrictions. Doc. 47 at 17. This Court should affirm the Magistrate Judge's holding that the FDIC did not act arbitrarily in finding the Proposed Payments to be "contingent on, or payable on or after," Mr. Larison's termination.

## II.   JUDGE LAMBERT CORRECTLY CONCLUDED THAT THE PROPOSED PAYMENTS DO NOT FALL UNDER THE BONA FIDE DEFERRED COMPENSATION EXCEPTION.

The Magistrate Judge went on to correctly hold that the FDIC did not misapply its own regulations in determining that the Proposed Payments did not qualify for an exception to the golden parachute restrictions as a "bona fide

5

deferred compensation plan." 12 C.F.R. § 359.1(d)(3)(iii). Section 1828(k)(4)(C) excludes some payments from the golden parachute payment definition, "meaning a bank is free to make them even though they meet the above-stated requirements." *Bunn v. FDIC*, 908 F.3d 290, 296 (7th Cir. 2018). Under the statute, "'any payment made pursuant to a bona fide deferred compensation plan' is not a golden parachute payment." *Id*. (quoting § 1828(k)(4)(C)(ii)). In order for a payment to qualify for this exception, any payment must be made: (1) "accordance with the terms of the plan as in effect no later than one year prior" to the bank's troubled condition designation (the "look-back period") and (2) "in accordance with any amendments . . . that do not increase the benefits payable thereunder [the plan]." 12 C.F.R. § 359.1(d)(3)(ii) (emphasis added).

  Mr. Larison's argument boils down to a disagreement with the FDIC on how to interpret agency regulations. At the time the amendment was entered into, it was unknown whether it "would increase or decrease plaintiff's benefit." Doc. 47 at 22. Because the amendment tied to stock performance could have *potentially* increased the benefits payable to Mr. Larison—depending on how the stock price fared—the FDIC concluded that the bona fide deferred compensation exception was inapplicable. A.R. 716-17. Judge Lambert correctly upheld the FDIC's interpretation, even considering Mr. Larison's contention that the Bank's stock performance ultimately resulted in lowered benefits.

Sound policy supports the FDIC's interpretation. Under Mr. Larison's view, the FDIC would never be able to render an immediate determination on whether a future payment tied to stock performance qualifies for the bona fide deferred compensation exception. Instead, the "golden parachute" status of a payment would have to await years until payments come due. Only then could the agency compare the actual amount due to be paid under the amendment versus the earlier plan. Presumably each payment would need to be compared to determine whether there was an increase—some payments might qualify for the exception, but others might not. Mr. Larison's interpretation would be unworkable. As the Magistrate Judge pointed out, the FDIC's application of the rule for an amendment which "potentially increases a claimant's benefit is not plainly erroneous or inconsistent with the statute." Doc. 47 at 22 (internal citations omitted).

Judge Lambert also correctly rejected Mr. Larison's argument that the FDIC should authorize payment under the pre-lookback SERP. Doc. 47 at 22-23. As the Magistrate Judge noted, Mr. Larison "provides no authority" that would authorize the Court "to reinstate a previous agreement," particularly where, as here, the operative SERP states it constitutes the "entire agreement" between the parties. *Id.* at 22 (citing A.R. 25).

## III. THE MAGISTRATE JUDGE CORRECTLY UPHELD THE FDIC'S DISCRETIONARY DISAPPROVAL.

Mr. Larison goes on to argue that Judge Lambert erred by failing to invalidate the FDIC's decision under 12 C.F.R. § 359.4, declining to approve the Proposed Payments on the merits. Doc. 48 at 8-9. But the Amended Complaint explicitly disclaims seeking this relief, and the prayer for relief does not contain a count seeking review of the FDIC's substantive declination. *See McBride v. Merrill Lynch Bank & Tr. Co.*, No. 09-cv-1204, 2010 WL 11507682 (M.D. Fla. Oct. 22, 2010) (denying motion for leave to amend complaint to add claim in the midst of summary judgment briefing, where deadline for amendment had elapsed); Doc. 21 ¶ 31 (conceding that the "agency action" that Plaintiff seeks to invalidate is "exclusively" defendant FDIC's initial threshold decision to deem the SERP payment a "golden parachute" payment).

The FDIC's Summary of Investigation thoroughly examined Mr. Larison's leadership as the CEO of the "troubled" bank, as well as its supervisory history. A.R. 712-721. The Administrative Record, for instance, contains a submission by the Bank, that "[i]n the Board's opinion, [plaintiff] was substantially responsible for Atlantic's troubled condition during the period in question, 2009 to March 22, 2012." Doc. 47 at 25 (quoting A.R. 956). Against this backdrop, Judge Lambert correctly held that FDIC's denial was not arbitrary. Doc. 47 at 25-26.

8

## CONCLUSION

For the foregoing reasons, Magistrate Judge Lambert's Report and Recommendations should be affirmed.

Dated: August 17, 2022

Respectfully submitted,

HERBERT G. SMITH II
Acting Senior Counsel

By: /s/ Erik Bond
ERIK BOND
Counsel, Corporate Litigation Unit
erbond@fdic.gov

Federal Deposit Insurance Corporation
3501 N. Fairfax Drive, D-7026
Arlington, VA 22226
Telephone: (703) 562-6461
Fax: (703) 562-2477

*Attorneys for defendant*
*Federal Deposit Insurance*
*Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of this document to be filed with the Court's CM/ECF system this 17th day of August 2022, thereby causing it to be served on all registered users.

/s/ Erik Bond