UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT LARISON,

      Plaintiff,

v.                                  Case No. 3:20-cv-1140-BJD-LLL

AMERIS BANK, AMERIS
BANCORP, INC., and FEDERAL
DEPOSIT INSURANCE
CORPORATION,

      Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on the Report and Recommendation

(Doc. 47; Report) entered by the Honorable Laura L. Lambert, United States

Magistrate Judge; Plaintiff's Objection (Doc. 48); and Defendants' Responses

(Docs. 52, 53). In the Report, the Magistrate Judge considered the following:

Defendant Federal Deposit Insurance Company's (FDIC) Motion for

Judgment on the Administrative Record (Doc. 32), Plaintiff Larison's Motion

for Summary Judgment (Doc. 33), Defendants Ameris Bank and Ameris

Bancorp, Inc.'s Motion for Summary Judgment (Doc. 34), and the related

briefing. (Docs. 35, 39.1, 40.1 38, 41–44). The Magistrate Judge recommended

that Defendants' Motions for Summary Judgment be granted, Plaintiff's

Motion for Summary Judgment be denied, and that judgment be entered in

favor of Defendants. Report at 1–2. Plaintiff objected and the matter is now ripe for review.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of fact are filed, the district court is not required to conduct <u>de novo</u> review of those findings. <u>See</u> <u>Garvey v. Vaughn</u>, 993 F.2d 776, 779 n.9 (11th Cir. 1993); 28 U.S.C. § 636(b)(1).

If, on the other hand, a party files an objection, the district judge must conduct a <u>de novo</u> review of the portions of a magistrate judge's report and recommendation to which the party objects. <u>Kohser v. Protective Life Corp.</u>, 649 F. App'x 774, 777 (11th Cir. 2016); 28 U.S.C. § 636(b)(1); <u>see also</u> Fed. R. Civ. P. 72(b)(3) (explaining that on dispositive matters, "the district judge must determine <u>de novo</u> any part of the magistrate judge's disposition that has been properly objected to"). The Court reviews <u>de novo</u> the Magistrate Judge's proposed legal conclusions to which Plaintiff objected. 28 U.S.C. § 636(b)(1). The Court adopts the summary of facts provided in the Background section of the Report. <u>See</u> Report at 2–7.

### A. Analysis

Plaintiff objects to the Report, arguing his Supplemental Retirement Agreement (SERP)[1] was not a golden parachute payment, or in the alternative, if it is a golden parachute payment, then Plaintiff's SERP was an exception to the golden parachute prohibition. (See generally Doc. 48).

#### a.  Plaintiff's SERP is a "Golden Parachute Payment"

At the heart of this issue is whether Defendant FDIC, a federal agency, properly classified payments from Plaintiff's SERP as impermissible "golden parachute" payments. See Doc. 48 at 1–4. Plaintiff has repeatedly requested review of his sixth amended SERP[2] and the proposed payment outlined within the Agreement. (See Doc. 45.1 at 3–5; 355–56; 528–59; 708–11). At each review, the proposed payment was considered a "golden parachute" payment. See id. The most recent determination by the FDIC was issued on April 14, 2021. Id. at 708–11.

Federal law explains the regulations governing insured depository institutions. See 12 U.S.C. § 1828. The FDIC "may prohibit or limit, by

---

[1] The Report adopts the acronym SERP as the underlying briefing refers to the "Supplemental Retirement Agreement" as such. This Court adopts the Report's language for continuity.

[2] As noted in the Report, Plaintiff and his employer entered into a SERP agreement in 2022, and the original SERP agreement was amended multiple times. Report at 3. The operative SERP is the sixth amended SERP. Id.

regulation or order, any golden parachute payment or indemnification

payment." 12 U.S.C. § 1828(k)(1). A golden parachute payment, in part, is

> any payment (or any agreement to make any
> payment) in the nature of compensation by any
> insured depository institution or covered company for
> the benefit of any institution-affiliated party
> pursuant to an obligation of such institution or
> covered company that is contingent on the
> termination of such party's affiliation with the
> institution or covered company.

12 U.S.C. § 1828(k)(4)(A)(i).

The Code of Federal Regulations provides further regulations and

statements of general policy about golden parachute and indemnification

payments. See 12 C.F.R. § 359.0 (2021). The definition of a golden parachute

payment within the Regulations mirrors the statutory language almost

verbatim. Compare 12 U.S.C. § 1828(k)(4)(A) with 12 C.F.R. § 359.1(f)(1)

(2021). In both the statute and the regulation, a golden parachute payment is

a payment that is, in part, contingent on the termination of an institution-

affiliated party. See 12 U.S.C. § 1828(k)(4)(A)(i); 12 C.F.R. § 1828

359.1(f)(1)(i) (2021).

On de novo review, this Court reviews Plaintiff's challenge to the

Magistrate Judge's determination under the Administration Procedure Act

(APA). BBX Capital v. Fed. Deposit Ins. Corp., 956 F.3d 1304, 1314 (11th Cir.

2020) (per curiam). "The APA provides, in relevant part, that a court shall

- 4 -

'hold unlawful and set aside agency action, findings, and conclusions' that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Id. (citing 5 U.S.C. § 706(2)). "The arbitrary and capricious standard is exceedingly deferential." Miccosukee Tribe of Indians of Fla. v. United States, 566 F.3d 1257, 1264 (11th Cir. 2009) (internal quotation marks omitted). "[W]hen a regulation merely parrots the language of the authorizing statute, the question for the courts is the meaning of the statute." BBX Capital, 956 F.3d at 1315.

Under Chevron, this Court must first determine whether the plain meaning of the statute "is unambiguous and does not lead to absurd results." Id. (citing Chevron U.S.A. Inc. v. NRDC Inc., 467 U.S. 837, 842–43 (1984); Packard v. Comm'r, 746 F.3d 1219, 1222 (11th Cir. 2014); Silva-Hernandez v. U.S. Bureau of Citizenship & Immigr. Servs., 701 F.3d 356, 363 (2012)). "In determining whether a statute is plain or ambiguous, we consider the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." In re BFW Liquidation, LLC, 899 F.3d 1178, 1188 (11th Cir. 2018) (internal quotation marks omitted). "A statute is ambiguous 'if it is susceptible to more than one reasonable interpretation.'" BBX Capital, 956 F.3d at 1315 (citing In re BFW Liquidation, LLC, 899 F.3d at 1188). Only if a court determines "the statute is ambiguous" does that court then "reach the second step of Chevron, which

requires [the court] to defer to the agency's construction of a statute it administers if that construction is permissible." Id.

Plaintiff argues that both the Magistrate Judge and Defendant FDIC incorrectly interpret the term "contingent," and more specifically the phrase "contingent on the termination," as provided in 12 U.S.C. § 1828(k)(4)(A). (Doc. 48 at 2–4). The plain language of the statute is unambiguous. The payment at issue would be a golden parachute payment if the payment is to compensate an institution-affiliated party, here Plaintiff, and the payment is "contingent on the termination of such party's affiliation with the institution or covered company." 12 U.S.C. § 1828(k)(4)(A). See BBX Capital, 956 F.3d at 1315–16 (concluding a severance payment was under the purview of the golden parachute statute because it was "an agreement to make severance payments by an institution to its executives after the institution was determined to be (and remained) in a troubled condition").

Plaintiff's SERP provided for such a payment upon Plaintiff's employment termination with Defendants Ameris Bank and Ameris Bancorp, Inc. (See Doc. 45.1 at 15–16, 716, 1103–04). Defendant Ameris Bancorp, Inc. acquired one of Plaintiff's former employers and merged with a second former employer. Id. at 532–38. One entity was Atlantic Coast Bank (ACB), and Plaintiff worked for the organization under various roles, including President and Chief Executive Officer for 29 years, ending in 2012. Id.

- 6 -

ACB was notified by federal regulators that the Bank was in "troubled condition status" as of November 1, 2010. Id. at 3. Regulators lifted ACB's troubled status on March 26, 2015. Id. at 718. Plaintiff's SERP became effective on February 3, 2011. Id. at  15, 716.

According to the SERP, Plaintiff would have "become 100 percent vested in" the disputed payment "in the event one of the following events occurs: death, Disability, Involuntary Termination, the occurrence of a Change in Control[,] or the Administrator in its sole discretion accelerates vesting." Id. at 16. To read any other definition of "contingent" into either the statute or Plaintiff's SERP would be going beyond the plain language of the statute. Plaintiff's argument that both the Magistrate Judge and Defendant FDIC misinterpret the statute necessarily fails.

### b. Plaintiff's Sixth SERP Was Not a Bona Fide Compensation Plan

Certain payments are exempt from the golden parachute regulations, including "bona fide deferred compensation plan[s] or arrangement[s] that the Board [of Governors of the Federal Reserve System] determines, by regulation or order, to be permissible." 12 U.S.C. § 1828(k)(4)(C); see also 12 C.F.R. § 359.1(d) (2021) (defining, by regulation, the kind of permissible bona fide payments not considered golden parachute payments). A plan is permissible if "any amendments to such plan . . . do not increase the benefits

payable" under the plan, and the amendments are made within one year. 12 C.F.R. § 359.1(d)(3)(ii) (2021).

As previously mentioned, ACB was in "troubled condition" as defined under 12 C.F.R. § 303.101(c) from November 1, 2010 to March 26, 2015. (Doc. 45.1 at 629–93, 718). Plaintiff's SERP was the sixth version and was executed on February 3, 2011. Id. at 80–92. The regulatory one-year "look-back" period started on November 1, 2009. See 12 C.F.R. § 359.1(d)(3)(i). Accordingly, the third amended SERP, effective December 11, 2009, is the relevant document to analyze to determine whether the controlling SERP is a bona fide exception. (See Doc. 45.1 at 55–65); (see also Docs. 32 at 12; 33 at 4; 34 at 5) (demonstrating that all parties agree the third amended SERP would be the relevant document to analyze to find a permissible bona fide compensation plan).

The relevant federal agency reviewed the third amended SERP and all subsequent amendments in 2014. (Doc. 45.1 at 230–32). The agency determined the SERPs were not permissible bona fide compensation plans because the amendments each increased Plaintiff's benefits under the plan. (Doc. 45.1 at 232). The agency made this determination by looking at the ways Plaintiff would have been paid under each subsequent amendment, concluding that the changes in method would "potentially increase [Plaintiff's] benefits during the look-back period." Id.

Under the APA, this Court must "hold unlawful and set aside agency action, findings, and conclusions' that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" BBX Capital, 956 F.3d at 1314 (citing 5 U.S.C. § 706(2)). Here, unlike with the golden parachute analysis, the regulation does not merely parrot the language of the authorizing statute, 12 U.S.C. § 1828(k)(4)(C).

An agency's action may be

> arbitrary and capricious where the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Alabama–Tombigbee Rivers Coal. v. Kempthorne, 477 F.3d 1250, 1254 (11th Cir. 2007). The agency has not acted in such a way to cause this Court to set aside the agency's determination that Plaintiff's SERP was not a permissible bona fide compensation plan. See BBX Capital, 956 F.3d at 1314.

"In 1990, Congress added Section 1828(k) to Title 12." Id. at 1308. "When companies hire executives, they sometimes promise to pay them a windfall if [the executive is] fired, the company becomes bankrupt, or the company is acquired." Wollschlager v. Fed. Deposit Ins. Corp., 992 F.3d 574, 578 (6th Cir. 2021). "To guard against excessive golden parachute payments

by struggling financial institutions, Congress established limitations for the FDIC to implement." Id. (citing 12 U.S.C. § 1828(k)).

12 U.S.C. § 1828(k) outlines golden parachute payments and authorizes "the FDIC to 'prohibit or limit, by regulation or order, any golden parachute payment or indemnification payment' to institution-affiliated parties ("IAPs"), including 'any director, officer, [or] employee' of the insured bank." BBX Capital, 956 F.3d at 1308 (citing 12 U.S.C. §§ 1828(k), 1813(u)). "A golden parachute payment is prohibited unless excepted." Id. at 1309 (citing 12 U.S.C. § 1828(k)(1); 12 C.F.R. § 359.2).

The FDIC has implemented regulations to determine whether a golden parachute payment is excepted:

> To gain regulatory approval to make a golden parachute payment, the applicant must first "demonstrate" and "certify" that it is not aware of any reason to believe the IAP (i) has "committed any fraudulent act or omission, breach of trust or fiduciary duty, or insider abuse," (ii) was "substantially responsible" for the institution's troubled condition, or (iii) has "violated any applicable Federal or State banking law or regulation."

Id. (citing 12 C.F.R. § 359.4(a)(4)(i)-(iii); 18 U.S.C. § 1828(k)(2)). If the "threshold certification requirement is satisfied, then the regulations provide for three categories of permissible payments[.]" Id. (citing 12 C.F.R. §§ 359.4(a)(1), (3)).

Plaintiff argues Defendant FDIC's application of 12 C.F.R. § 359.4 was "inconsistent with [ ] statutory and regulatory authority." (Doc. 48 at 7–9). However, the regulations provided in 12 C.F.R. § 359.4 align with Congress' goal to allow the FDIC to establish limitations on companies like Defendants to guard against excessive golden parachute payments. See Wollschlager, 992 F.3d at 578; BBX Capital, 956 F.3d at 1308–1310 (explaining the regulations provided under 12 C.F.R. § 359.4 and how the regulations align with the intended outcomes Congress had in mind when enacting 12 U.S.C. § 1828(k)).

Further, Defendant FDIC's reasoning, in applying the threshold test under 12 C.F.R. § 359.4(a), aligned with the statutory factors under 12 U.S.C. § 1828(k)(2). The golden parachute statute provides the FDIC may consider whether "there is a reasonable basis to believe that the [IAP] has committed any fraudulent act or omission, breach of trust or fiduciary duty, or insider abuse with regard to the depository institution or covered company that has had a material affect on the financial condition of the institution." 12 U.S.C. § 1828(k)(2)(A).

In finding Plaintiff's SERP did not meet the threshold certification requirement, Defendant FDIC explained that "[i]n his role at ACB, [Plaintiff] did not provide effective oversight of the Executive administration function and his actions, or lack thereof, contributed to the Bank's losses and

deteriorating financial condition." (Doc. 45.1 at 710); see also BBX Capital, 956 F.3d at 1309.

The agency's determination that Plaintiff's SERP was not a bona fide exception was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. (See Doc. 45.1 at 232). The agency explained how the amendments could increase Plaintiff's benefits by explaining changing financial conditions and the terms within the agreements. Id. at 230–32. The agency relied on factors in accordance with both federal regulations and Congress' intended goals in enacting 12 U.S.C. § 1828(k). The agency further reviewed facts and made conclusions in accordance with the factors set forth under 12 U.S.C. § 1828(k)(2).[3] Accordingly, this Court will not set aside the agency's determination as a matter of law. See BBX Capital, 956 F.3d at 1314.

Accordingly, after due consideration, it is

**ORDERED:**

1. Plaintiff's Objection (Doc. 48) is **OVERRULED**.

2. The Report and Recommendation (Doc. 47) is **ADOPTED as supplemented** as the opinion of the Court.

---

[3] Plaintiff argues Defendant FDIC and the Magistrate Judge erred by analyzing the § 359.4(b) factors under incorrect facts. (Doc. 48 at 8). However, the record citations Plaintiff provides do not show contradicting facts or erroneous conclusions. (See Doc. 45.1 at 475, 711).

3. Plaintiff's Motion for Summary Judgment (Doc. 33) is **DENIED**.

4. Defendant FDIC's Motion for Judgment on the Administrative Record (Doc. 32) is **GRANTED**.

5. Defendants Ameris Bank and Ameris Bancorp, Inc.'s Motion for Summary Judgment (Doc. 34) is **GRANTED**.

6. The Clerk of Court is directed to enter **judgment** in favor of Defendants and against Plaintiff.

7. The Clerk is further directed to close the file.

**DONE** and **ORDERED** in Jacksonville, Florida this ___13th___ day of September, 2022.

BRIAN J. DAVIS
United States District Judge

8
Copies furnished to:

Counsel of Record